THAYER v. BERKEY & GAY FURNITURE CO.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT — PERMANENT PARTIAL DISABILITY—EVIDENCE—SUFFICIENCY.

   In proceedings under the workmen's compensation act for disability caused by an injury to plaintiff's finger, evidence *held*, to support a finding that she was permanently partially disabled rather than totally disabled as claimed by her.

2. SAME—BASIS OF COMPENSATION—PRESUMPTION OF LEGALITY.

   Where the department of labor and industry made no written findings of fact, and there is no recital showing how the amount of plaintiff's loss for permanent partial disability was arrived at, it will be presumed, on certiorari to review the award, that the provisions of the statute were followed, and that she was awarded 60 per cent. of the difference between the weekly wage she was receiving at the time of the injury and what she subsequently was able to earn in the same employment.

3. SAME—FINDING CONCLUSIVE IF SUPPORTED BY EVIDENCE.

   The finding of the department of labor and industry, if supported by evidence, is conclusive.

4. SAME—LUMP SUM TO BE AWARDED ONLY IN EXCEPTIONAL CASES.

   Although the department, under the statute and its own rules, has authority to order lump sum payments in exceptional cases where circumstances create a necessity for such action, such order should not be made where there was no agreement and no application by plaintiff therefor.

Certiorari to Department of Labor and Industry. Submitted April 12, 1922. (Docket No. 55.) Decided November 2, 1922.

Mary Thayer presented her claim for compensation against the Berkey & Gay Furniture Company and

On compensation recoverable under workmen's compensation act by payment of lump sum, see notes in 1916A, 172, 262; L. R. A. 1917D, 179.

On compensation recoverable by incapacitated employee under workmen's compensation act, see notes in L. R. A. 1916A, 254; L. R. A. 1917D, 167.

On conclusiveness of findings of industrial accident board in action for injuries under workmen's compensation act, see notes in L. R. A. 1918F, 877, 915.

the Furniture Mutual Insurance Company, insurer, for injuries received in defendant's employ. From an award of compensation based upon a lump sum payment, plaintiff brings certiorari. Reversed and remanded.

*Edgar A. Maher,* for plaintiff.

*Francis D. Campau,* for defendants.

MCDONALD, J. This case is here on writ of certiorari to review an order of the department of labor and industry. On June 3, 1920, Mary Thayer, while in the employ of the Berkey & Gay Furniture Company of Grand Rapids, suffered an injury by having the second finger of her right hand brought into contact with the operating mechanism of an electric fan. At the time of the injury her weekly wage was $29.50. On June 21, 1920, an agreement was made between the parties that she be paid $14 per week during total disability, and at the proper rate per week during partial disability, if she became legally entitled to such compensation. This agreement was approved by the board. On the 27th day of July, 1920, the defendants filed a petition to stop compensation for the reason that the plaintiff had entirely recovered from the injury, and that her then disability was not the result of the accident. On the 18th of October, 1920, the board made an order stopping compensation as of June 23, 1920, but without prejudice to the plaintiff's right to petition for additional compensation should future developments warrant it. On November 4, 1920, the plaintiff filed a petition asking to have the order stopping compensation vacated, and that she be granted additional compensation. Answer to this petition was filed. Testimony was taken, and on the 18th of March, 1921, the board made an order awarding the plaintiff $14 per week from September 30, 1920, to November 22, 1920, for total disability, and

$7.98 per week for partial disability from November 22, 1920, to December 2, 1920. The order stopping compensation was not disturbed. On the 9th day of May, 1921, the plaintiff filed a second petition asking for compensation for partial disability from December 3, 1920, to January 29, 1921, and for total disability after the latter date. Proofs were taken and on the 12th day of August, 1921, the board made an order reciting that the plaintiff was permanently partially disabled since December 3, 1920, and awarded her compensation at the rate of 89c a week during the period of 474 weeks, and directed that the payment be made in a lump sum, amounting to $420. It is this order that the plaintiff asks to have reviewed.

It is urged by counsel for the plaintiff that the undisputed evidence upon which the board made its award shows that the plaintiff is totally disabled to do the work at which she was employed at the time of the injury, and that the board was not justified in finding that she was permanently partially disabled.

At the time of the injury the plaintiff was employed as a varnish sander. The business of a varnish sander is to rub, by hand, with garnet sand paper, a surface which has been sprayed with varnish. The object is to smooth the surface so as to make it ready for the next coat of finish. The plaintiff says that after her injury she could not do the work because it required the use of the injured finger. She testified as follows:

"*Q.* Has there been any time since you were injured, June 3, 1920, that you could do such work as you had been doing for that company prior to the time of such injury?

"*A.* There has not.

"*Q.* Where do you feel the pain that you have at the present time?

"*A.* At the point of the finger, root of the nail and around the nail, and at the side of the finger; sometimes more painful than at others; it extends through the palm of my hand and up the arm to my arm pit;

sometimes the finger feels as if it would burst at the end, and beats and throbs; I can't bear no pressure on the end of the finger.

"*Q.* What is the effect of sensation caused by pressure on the end of the finger?

"*A.* Shooting pain and misery up to the arm pit, a sharp ache.

"*Q.* Whether this pain continues through the whole of the hand and arm to the arm pit, as long as there is pressure on the finger?

"*A.* It does."

It is claimed that there is an enlargement of the joint of the finger resulting from a deposit of calcareous matter, and that its condition is due solely to the injury which she received while in defendant's employ.

Doctor Vandenberg, a witness called by the defendants, testified as follows:

"*Q.* Will you please state the condition you found with reference of course to an injury as of June 3, 1920?

"*A.* The distal phalanx of the finger in question presented a small linear scar, probably a half inch in length, nothing more abnormal was made out excepting that the entire distal phalanx, the soft parts of course, was extremely sensitive and tender. * * *

"*Q.* I will ask you if in your opinion this injury, consisting of the cutting of the finger by an electric fan on June 3d, is the cause of the deposit which this radiograph shows?

"*A.* Absolutely not, in my opinion. * * *

"*Q.* You don't know how deep the injury is in that bone?

"*A.* I do.

"*Q.* How do you know?

"*A.* I can tell by the x-ray picture here. It is not deep. Just on the surface of the bone."

Doctor Denham testified:

"Well, she came to us, a woman about fifty years old, rather trembly and nervous, her hands were trembling, both hands, with a slight scar across the

end of the right middle finger.    This scar was soft,
a little discolored, dark; evidently dressed with some
dark stuff, some dye of some kind, just healed in kind
of like a tattoo, you know; the scar was soft, not
deep; had the injury been deep there would have
been a deeper scar, and some retraction of the end of
the finger, but the outline of the finger is practically
normal.    Some more of her history; that pain she
says radiates up her arm; she says it is a painful,
tender scar, that is, it is tender to the touch and
pains her when there is nothing touching it.    The
pain radiates up her arm and she describes along the
tendon or the cords and even to her arm pit.    The
examination shows no keloid, no excessive scar, no
hardness, nothing that indicates that she should have
pain.    That is about all I think we found."

Other testimony is to the effect that there is still
an enlargement of the joint due to a calcareous de-
posit as a result of the injury; that the condition is
permanent and interferes to some extent with the
motion and flexibility of the joint.    We have made
reference to but a small portion of the testimony, and
for the purpose only of showing that there is evidence
to support a finding that plaintiff was not totally dis-
abled, but is permanently partially incapacitated from
doing the work in which she was engaged at the time
of the injury.

Having arrived at this conclusion, it was the duty
of the board to measure her disability in dollars and
cents.    What is she now able to earn in the same em-
ployment in which she was engaged at the time of her
injury?    Unfortunately, the board made no written
findings of fact and there is no recital in the order
that offers the slightest suggestion as to how it arrived
at the amount of her loss.  ' Presumptively, however,
they followed the provisions of the statute applicable
to cases of permanent partial disability, and awarded
her 60 per cent. of the difference between the weekly
wage she was receiving at the time of the injury, and

what she was subsequently able to earn in the same employment. They had before them the evidence of doctors, and others, as to the character and extent of her injury. Mr. McNealy, superintendent of finish in the Berkey & Gay Company, explained the manner of doing a varnish sander's work, and testified that if plaintiff's injuries were as testified to by Doctor Denham she could do the work now as easily as before. Miss Landgren, in charge of the wrapping and packing room of the Grand Rapids Brass Company, where plaintiff worked after the accident from November 22, 1920, until January 29, 1921, testified that during that time she was employed in wrapping boxes and did her work satisfactorily and without complaint. We think there was evidence from which the board could determine the extent of her injury and her diminished earning capacity. Its finding is therefore conclusive.

It is further urged by plaintiff that the board was without authority to order a lump sum payment where there was no agreement and no application therefor. It might be helpful to call the board's attention to its rules of procedure, particularly No. 10, in which it is said:

"It is manifest that the clear purpose of the legislature was to provide that the compensation receivable under this law should go to the persons or families entitled to the same, in weekly payments, it being the judgment of the legislature that when so paid it would more effectively meet and relieve the wants of the injured employees and their families than if paid in a lump sum. This view has the full indorsement and concurrence of the board. Therefore, lump sum payments will only be authorized in exceptional cases, where circumstances create a necessity for such action."

It appears from the proofs that the plaintiff has not been paid for the first week of total disability. This

220—Mich.—22.

amount is $14, and should have been included in the order.

The case will be remanded and the award modified in accordance with this opinion. Plaintiff will have costs.

FELLOWS, C. J., and WIEST, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.